# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

Leah Fabry and Lauren Connors,
on behalf of themselves and all others
similarly situated,

      Plaintiffs,

v.                            Case No. 2:19-cv-10020-SFC-MKM
                                   Hon. Sean F. Cox

Recipes Inc., a Michigan corporation,
and Trung Huynh, an individual,
jointly and severally,

      Defendants.

_____/

| | |
|---|---|
| Pitt, McGehee, Palmer & Rivers, P.C. | ANDREW T. BARAN (P31883) |
| Megan Bonanni (P52079) | ALEXIS GIPSON-GOODNOUGH (P82337) |
| Channing Robinson-Holmes (P81698) | Giarmarco, Mullins & Horton, PC |
| Attorneys for Plaintiff | Attorney for Defendants |
| 117 W. Fourth Street, Suite 200 | 101 W. Big Beaver Road,10th Fl. |
| Royal Oak, MI  48067 | Troy, MI 48084-5280 |
| (248) 398-9800 | (248) 457-7000 |
| mbonanni@pittlawpc.com | abaran@gmhlaw.com |
| crobinson@pittlawpc.com | agipson@gmhlaw.com |

_____/

## JOINT MOTION IN SUPPORT OF APPROVAL OF SETTLEMENT OF COLLECTIVE ACTION UNDER THE FLSA

Plaintiffs, by and through their undersigned counsel, individually and on

behalf of all others similarly situated, move for an order granting approval to

the class action settlement described in the Settlement and Release Agreement,

attached hereto as Exhibit 1 (hereinafter referred to as "The Agreement"), as supported by the attached Memorandum of Law and further determining that:

1.   The terms and conditions of the proposed settlement between the Plaintiff Class and Defendants as defined and described in The Agreement are fair, reasonable, and adequate.

2.   That the method of allocating a settlement award to each member of the Settlement Class is fair, reasonable and adequate.

3.   That  the class representatives, Lauren Connors and Leah Fabry, should be awarded a service award for their time, effort and risk undertaken to represent the class and to secure the benefits for the entire class under the settlement.

4.   That Class Counsel should be awarded the stated amount of fees and costs described in paragraph 4.1(c) of The Agreement, as fair and reasonable attorneys' fees and costs, payable by Defendants, as compensation for their time, efforts, risks and expense in representing the Collective on a contingent basis and for securing the pool of benefits for the entire Collective under the Settlement.

5.   That any objections to the settlement as outlined within the Joint Stipulation, to the extent any exist, are without basis, and are not well founded, and should be overruled in their entirety;

6.     Defendants consent to the relief requested herein.


Respectfully submitted,

Pitt, McGehee, Palmer & Rivers, P.C.

By: s/ Channing Robinson-Holmes
Megan Bonanni (P52079)
Channing Robinson-Holmes (P81698)
Attorneys for Plaintiff
117 W. Fourth Street, Suite 200
Royal Oak, MI  48067
(248) 398-9800
mbonanni@pittlawpc.com
crobinson@pittlawpc.com


Dated: December 11, 2019

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Leah Fabry and Lauren Connors,
on behalf of themselves and all others
similarly situated,

      Plaintiffs,

v.                                                    Case No. 2:19-cv-10020-SFC-MKM
                                                      Hon. Sean F. Cox

Recipes Inc., a Michigan corporation,
and Trung Huynh, an individual,
jointly and severally,

      Defendants.

_____/

| | |
|---|---|
| Pitt, McGehee, Palmer & Rivers, P.C. | ANDREW T. BARAN (P31883) |
| Megan Bonanni (P52079) | ALEXIS GIPSON-GOODNOUGH (P82337) |
| Channing Robinson-Holmes (P81698) | Giarmarco, Mullins & Horton, PC |
| Attorneys for Plaintiff | Attorney for Defendants |
| 117 W. Fourth Street, Suite 200 | 101 W. Big Beaver Road,10th Fl. |
| Royal Oak, MI  48067 | Troy, MI 48084-5280 |
| (248) 398-9800 | (248) 457-7000 |
| mbonanni@pittlawpc.com | abaran@gmhlaw.com |
| crobinson@pittlawpc.com | agipson@gmhlaw.com |

_____/

## BRIEF IN SUPPORT OF APPROVAL OF SETTLEMENT
## OF COLLECTIVE ACTION UNDER THE FLSA

# TABLE OF CONTENTS

Index of Authorities ...........................................................................................ii
I.    Introduction.............................................................................................1
II.   Pertinent Facts........................................................................................1
III.  Summary of the Settlement Terms ......................................................3
      A.  The Settlement Fund......................................................................3
      B.  Eligible Employees.........................................................................3
      C.  Allocation Formula .........................................................................4
      D.  Service Award..................................................................................4
      E.  Attorneys Fees and Costs..............................................................5
IV.   Argument ................................................................................................5
      A.  Standard of Review ........................................................................5
            1.  The Absence of Fraud or Collusion in the Settlement...................7
            2.  Complexity, Expense, and Likely Duration
                of the Litigation...............................................................................7
            3.  Amount of Discovery Engaged In By the Parties...........................8
            4.  The Likelihood of Success on the Merits.......................................9
            5.  The Opinions of Class Counsel and the
                Class Representatives .....................................................................9
            6.  The Public Interest .......................................................................10
      B.  The Settlement Is Fair and Reasonable and
          Should Be Approved.....................................................................10
      C.  The Service Awards to the Named and Opt-In
          Plaintiffs Should Be Approved As Fair and Reasonable.......................13
      D.  Attorneys' Fees and Costs Should be Approved as
          Fair and Reasonable ....................................................................19
            1.  An Award of One-Third of the Fund is Reasonable
                and Should Be Granted .................................................................23
Conclusion...........................................................................................................26

i

## INDEX OF AUTHORITIES

**Cases**

*Alli v. Boston Mkt. Corp.*, No. 10 Civ. 00004, 2012 WL 1356478, at *3 (D. Conn. Apr. 17, 2012)................................................................................................ 19

*Aros v. United Rentals, Inc., No. 3:10-CV-73 (JCH), 2011 U.S. Dist. LEXIS 125870 (D. Conn. Oct. 31, 2011)* .......................................................................... 14

*Arrington v. Mich. Bell Tel. Co.*, 2012 U.S. Dist. LEXIS 157362, *1 (E.D. Mich. Nov. 2, 2012)*.................................................................................................. 5

*Bartlow v. Grand Crowne Resorts of Pigeon Forge*, No. 11 Civ. 400, 2012 WL 6707008, at *1-2 (E.D. Tenn. Dec. 26, 2012)............................................... 10

*Bert v. AK Steel Corp.*, No.02 Civ. 467, 2008 WL 4693747, at *3 (S.D. Ohio Oct. 23, 2008)....................................................................................................... 15

*Bessey v. Packerland Plainwell, Inc.*, No. 06 Civ. 95, 2007 WL 3173972, at *4 (W.D. Mich. Oct. 26, 2007)........................................................................... 21

*Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984)....................................................... 21

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 480-81 (1980).......................................... 22

*Bozak v. FedEx Ground Package Sys., No. 3:11-cv-00738-RNC, 2014 U.S. Dist. LEXIS 106042 (D. Conn. July 31, 2014)* ..................................................... 10

*Braunstein v. E. Photographic Labs., Inc.*, 600 F.2d 335, 336 (2d Cir. 1978) ..... 20

*Capsolas v. Pasta Res. Inc.*, No. 10 Civ. 5595, 2012 WL 4760910, at *7 (S.D.N.Y. Oct. 5, 2012) ................................................................................................. 24

*Crawford v. Lexington-Fayette Urban Cnty. Gov't, CIV. A. 06-299-JBC*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008) ...................................................6,11

*Dallas v. Alcatel-Lucent USA, Inc., No. 09-14596, 2013 U.S. Dist. LEXIS 71204 (E.D. Mich. May 20, 2013)* ......................................................................... 13

*Date v. Sony Elecs., Inc., No. 07-15474, 2013 U.S. Dist. LEXIS 108095 (E.D. Mich. July 31, 2013)*................................................................................................ 13

*deMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580, at *8 (S.D.N.Y. Aug. 23, 2010)............................................................................ 20

*Dillworth v. Case Farms Processing, Inc.*, No. 08 Civ. 1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010).......................................................................... 24

*Dixon v. Zabka*, No. 3:11-cv-982 (MPS), 2014 U.S. Dist. LEXIS 159692 (D. Conn. Nov. 13, 2013) ............................................................................................. 10

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) ..................... 15

*Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) .................... 11

*Gentrup v. Renovo Servs., LLC*, No. 07 Civ. 430, 2011 WL 2532922, at *2 (S.D. Ohio June 24, 2011) ..................................................................................... 11

*Griffin v. Flagstar Bancorp. Inc.*, No. 10 Civ. 10610, 2013 WL 6511860, at *9 (E.D. Mich. Dec. 12, 2013) ............................................................................. 13

*Guippone v. BH S&B Holdings*, No. 09 Civ. 1029, 2011 WL 5148650, at *7 (S.D.N.Y. Oct. 28, 2011) ...................................................................................... 16

*Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) ...................................... 14

*Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ................................................ 25

*Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989) ............................... 11

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 536 (E.D. Mich. Oct. 10, 2003) ................................................................................ 13

*In re Packaged Ice Antitrust Litig.*, 2012 WL 5493613, at *9 .................................. 13

*In re Se. Milk Antitrust Litig.*, No. 08 MD 1000, 2013 WL 2155387, at *3 (E.D. Tenn. May 17, 2013) ..................................................................................... 25

*In re Skechers Toning Shoe Products Liab. Litig.*, Nos. 11 MD 2308, *et al.*, 2013 WL 2010702, at *14 (W.D. Ky. May 13, 2013) ........................................... 15

*Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) ............................................ 6

*Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, at *13 (S.D.N.Y. Sept. 16,2011)........................................................................................................... 20

*Johnson v. Midwest Logistics Sys., Ltd.*, No. 11 Civ. 1061, 2013 WL 2295880, at *5-6 (S.D. Ohio May 24, 2013) ............................................................................ 16

*Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 787 (N.D. Ohio 2010)... 15

*Lovaglio v. W & E Hospitality, Inc.*, No. 10 Civ. 7351, 2012 WL 2775019, at *4 (S.D.N.Y. July 6, 2012)............................................................................................ 19

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982) ...........................................................................................................5,10

*Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436-47 (2d Cir. 2007) ............................................................................................................ 23

*McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984) ............. 11

*Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009) ............................... 22

*O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009) ............... 11

*Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, 2010 U.S. Dist. LEXIS 12762, at *1 (S.D.N.Y. Feb. 9, 2010) ................................................................................... 14

*Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 594 (S.D. Ohio 2002)....... 11

*Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974)........... 20

*Rawlings v. Prudential-Bach Props., Inc.*, 9 F.3d 513, 515 (6th Cir. 1993).......... 21

*Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 2008) ...................................... 24

*Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599822, at *7 (S.D.N.Y. Aug. 16, 2011)........................................................................................ 21

iii

*Sand v. Greenberg*, No. 08 Civ. 7840, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7,2010) ................................................................................................ 20

*Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *14 (S.D.N.Y. Apr. 16, 2012) .................................................................. 17

*Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) ........... 17

*Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir. 1983) .................................... 25

*Swigart v. Fifth Third Bank*, No. 11 Civ. 88, 2014 WL 3447947, at *7 (S.D Ohio July 11, 2014).................................................................................. 18

*Thompson v. Bruister & Assocs., Inc.*, 967 F. Supp. 2d 1204, 1222 (M.D. Tenn. Aug. 23, 2013) ................................................................................... 12

*Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461, at *6 (E.D.N.Y. Aug. 6, 2012) ..................................................................................... 19

*Turner v. Perry Twp., Ohio*, No. 03 Civ. 455, 2005 WL 6573783, at *3 (S.D. Ohio Dec. 30, 2005)................................................................................... 20

*U.S. v. Rosenwasser*, 323 U.S. 360, 361 (1945) ............................................................ 10

*UAW v. Gen. Motors Corp.*, No. 05 Civ. 73991, 2006 WL 891151, at *18 (E.D. Mich. Mar. 31, 2006) ............................................................................ 12

*Velez v. Majik Cleaning Serv., 2005 U.S. Dist. LEXIS 709 (S.D.N.Y. Jan. 18, 2005)* 14

*Wade v. Werner Trucking Co.*, No. 10 Civ. 270, 2014 WL 2535226, at *1 (S.D. Ohio June 5, 2014) .................................................................................. 10

*Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-98 (11th Cir. 1999) ................................................................................................ 23

*Williams v. MGM-Pathe Commc'ns. Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) .. 23

## I.   <u>INTRODUCTION</u>

This is a suit for alleged violation of the Fair Labor Standards Act ("FLSA").  Although Defendants deny any and all liability, the parties have agreed to a settlement, the terms of which are defined and described in The Agreement.   Following a thorough investigation and extensive negotiations, Plaintiffs, individually and on behalf of all others similarly situated, and Defendants have agreed, subject to Court approval, to resolve this wage and hour lawsuit on a collective-wide basis for fair and adequate monetary relief. The settlement satisfies the criteria for approval of a FLSA collective action settlement because it resolves a bona-fide dispute, was reached after contested litigation, and was the result of settlement negotiations conducted by counsel well-versed in wage and hour law.

Accordingly, Plaintiffs respectfully request that the Court issue an order approving the $37,500 settlement as set forth in paragraph 4.1 of the Settlement and Release Agreement ("The Agreement") attached as Exhibit 1 and the individualized awards as set forth therein and direct distribution in accordance thereto.

## II. <u>PERTINENT FACTS</u>

This matter was originally filed on January 3, 2019. (Dkt. 1). The Complaint sets forth a detailed recitation of factual and legal allegations

pertaining to FLSA claims and the basis for collective action certification. There are two named Plaintiffs.  Throughout the course of this litigation and following the parties' stipulation to conditional class certification, 11 other individuals opted into the litigation.[1]

Prior to engaging in the full-blown merits of discovery, counsel for the respective parties began discussing the merits of the case and certification difficulties for each side. The parties also exchanged relevant documents and information including payroll data as well as sales records.

After a full review of this information and open and full debate over the legal and factual issues, the Parties, who have been represented by counsel at all times, agreed that the negotiated terms of the settlement represent a fair, reasonable, and just compromise of disputed issues.

With compromise from both sides, the settlement agreement now before the Court for approval was reached.

The negotiations leading to this settlement were adversarial, non-collusive, and conducted at arms' length. The Parties share an interest in fully and finally resolving the issues raised in this action. Because the Parties recognized the expense and risks associated with prosecution and defense

---

[1] Twelve individuals opted into this litigation, however, after one individual opted-in, the Parties learned that she did not qualify as a Class Member.

through trial and any possible appeal, as well as the risk of uncertainty of the outcome inherent in any litigation, they agreed to be bound by the settlement agreements, which they now ask this Court to approve. The Parties have conditioned the overall settlement agreements upon the Court's approval of all their terms.

### III.  SUMMARY OF THE SETTLEMENT TERMS

#### A.  The Settlement Fund

The Agreement establishes a maximum settlement fund of $37,500 to settle claims against Defendants (the "Fund"). The Fund covers eligible opt-in Settlement Class Members' awards, any Court-approved service awards to Plaintiffs and any Court-approved attorneys' fees and costs.

#### B.  Eligible Employees

After the parties stipulated to conditional class certification, Court-approved Notice was sent to all eligible opt-ins to this litigation – all current and former servers who worked for Defendants at Defendants' location in Troy, Michigan at any time during the class period. The opt-in period has since closed and 11 individuals opted into this action. Each of the opt-ins was notified of the proposed Settlement and has signed the proposed Settlement Agreement signifying their intent to be bound by its terms.

### C. Allocation Formula

Plaintiffs who have opted into this legal action will receive settlement payment pursuant to an allocation formula calculated by multiplying each individual's total sales for the class period, provided by Defendants, by 2%. (Exhibit 1, ¶ 4.1). This calculation is based on Plaintiffs' Complaint, which alleged that Class Members were required to tip Managers 1% to 3% of their individual daily sales. (Dkt. 1, ¶ 22).[2] Each Settlement Class Members' payment from the Net Settlement Amount will be allocated and paid as unpaid wages and will be reported on W2 Forms. (Exhibit 1, ¶ 4.1).

### D. Service Award

The Agreement provides that, with Court approval, the Class Representatives Leah Fabry and Lauren Conrad will receive service awards in the amount of $2,924.29 in recognition of their assistance rendered in obtaining the benefits of the settlement for the Collective as well as the risks they took to do so. *Id*. These figures represent the remainder of the Net Figure to Class Members after the aforementioned Allocation Formula was applied. Class Representatives Fabry and Connors assisted counsel in the investigation of claims, production of relevant documents, attendance at meetings, and

---

[2] Plaintiffs did allege damages based on unpaid time during closing shifts and for unpaid meetings (Dkt. 1, ¶¶ 15-16), however thorough investigation has revealed these damages to be negligible. Allocating the Fund based on Plaintiffs' tip-sharing allegations is more meaningful and beneficial to Class Members.

providing of information; their assistance was invaluable in reaching the aforementioned settlement.

### E.    Attorneys' Fees and Litigation Costs

Subject to Court approval, Plaintiffs' Counsel will receive $12,828.59 (one-third of the settlement fund of $37,500.00 in addition to the $677.00 of actual out-of-pocket costs) as attorneys' fees and reimbursement of actual reasonable out-of-pocket costs and expenses. *Id.* As part of the Settlement, Defendants have agreed not to object to an award for fees and costs up to this amount.

## IV. <u>ARGUMENT</u>

### A.    Standard of Review

As a general rule, "court approval is required for the settlement of claims for back wages or liquidated damages under the FLSA." *Arrington v. Mich. Bell Tel. Co.*, 2012 U.S. Dist. LEXIS 157362, *1 (E.D. Mich. Nov. 2, 2012) (J. Lawson) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982). Therefore, "[w]hen employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness. If the settlement is a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement in order to promote

the policy of encouraging settlement of litigation." *Arrington*, 2012 U.S. Dist. LEXIS 157362, *2 (internal citations and quotations omitted); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d at 1354.

Courts often draw on Rule 23 case law to guide them in reviewing and approving FLSA settlements. The Sixth Circuit has identified seven factors that should aid courts in the determination of whether a proposed FLSA settlement is fair, reasonable, and adequate:

> (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Arrington*, 2012 U.S. Dist. LEXIS 157362, *2-3; *see also Crawford v. Lexington-Fayette Urban Cnty. Gov't, CIV. A. 06-299-JBC*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008) *(citing Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). The above list is not exhaustive and courts do not necessarily apply all of the factors; rather, the factors are guideposts used to determine the fairness of a proposed settlement. "A court applying these factors must do so in the context of the actual settlement." *Arrington*, 2012 U.S. Dist. LEXIS 157362, *3.

6

### 1.    The Absence of Fraud or Collusion in the Settlement

In the instant case, there is a *bona fide* dispute over whether Defendants violated the FLSA. Plaintiffs allege Defendants violated the FLSA because they forced Plaintiffs to illegally share their tips with hourly or salary employees and failed to pay Plaintiffs for some, but not all of the time that they worked. Defendants deny all such claims.

As is evident from the amount to be paid to Plaintiffs in this settlement, it is clear there was no fraud or collusion. The settlement will provide Settlement Class Members with adequate and fair awards and will eliminate the risks and costs both sides would bear if this litigation continued to resolution on the merits. The Parties exchanged information and documents in order to educate each other about their respective positions. In agreeing upon the proposed settlement, the Parties had sufficient information and conducted an adequate investigation to allow them to make an educated and informed analysis and conclusion.

### 2.    Complexity, Expense, and Likely Duration of the Litigation

The complexity, expense, and length of continued litigation weigh in favor of this settlement.   Both sides acknowledge that the Parties' respective positions were substantially complicated and uncertain due to numerous

factual disputes and legal theories. On the other hand, if Plaintiffs ultimately prevailed at trial, Defendants would be faced with the prospect of a verdict against it and the obligation to pay liquidated damages, as well as Plaintiffs' attorneys' fees and costs anticipated to be in excess of $150,000 at that juncture. If Defendants ultimately prevailed, Plaintiffs face dismissal of their claims and no recovery.

In light of the foregoing, the Parties agree that either outcome is possible in this litigation. For these reasons, this settlement is a reasonable means for the Parties to minimize future risks and litigation costs.

### 3. <u>Amount of Discovery Engaged In By the Parties</u>

While the parties did not engage in formal discovery, the parties exchanged relevant documents and other data relevant to Defendants' pay practices, payroll records and policies. Considerable time and effort was spent in the compilation of damage assessments for each Plaintiff, which required an analysis of company data related to sales and hours worked. The Parties discussed the data, the likelihood of success of the Parties' claims and defenses, as well as prospective damages. One of the driving factors in this settlement was the desire to settle the case prior to incurring further extensive attorneys' fees and costs associated with formal discovery and motion practice.

### 4. <u>The Likelihood of Success on the Merits</u>

Plaintiffs' likelihood of success on the merits and the amount they would be awarded is uncertain, further suggesting that this settlement is fair and appropriate. Plaintiffs assert, and Defendants deny, that they are owed compensation due to Defendants' alleged violations of the FLSA.  The range of possible recovery by Plaintiffs is open to dispute. Even if Plaintiffs succeed on the merits of their claims, which would require substantial additional time and an exercise of resources by both Parties, the specific amount of their recovery is uncertain. Thus, this proposed settlement is a fair and reasonable settlement in relation to the potential risks and recovery in this case.

### 5. <u>The Opinions of Class Counsel and the Class Representatives</u>

There are 2 named Plaintiffs and 11 opt-in Plaintiffs in this litigation. The named Plaintiffs participated throughout settlement discussions. Plaintiffs' counsel and the named Plaintiffs are of the opinion that this proposed settlement is a fair and reasonable compromise of this dispute. Moreover, the 11 opt-in Plaintiffs have likewise reviewed the proposed Settlement Agreement and affixed their signatures to the Agreement. (Exh. 1).

### 6.    **The Public Interest**

The public interest is served by the proposed settlement as it serves the purpose and intent of Congress in enacting the FLSA—"to raise substandard wages and to give additional compensation for overtime work ... thereby helping to protect this nation 'from the evils and dangers resulting from wages too low to buy the bare necessities of life and from long hours of work injurious to health.'" *U.S. v. Rosenwasser*, 323 U.S. 360, 361 (1945)(*quoting* Sen. Rep. No. 884 (75th Conf., 1st Sess.)).  The settlement also serves the purpose of ensuring "just, speedy, and inexpensive" resolution of this action.  Fed R. Civ. Pro.1.

### B.    **The Settlement Is Fair and Reasonable and Should Be Approved**

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); *Wade v. Werner Trucking Co.*, No. 10 Civ. 270, 2014 WL 2535226, at *1 (S.D. Ohio June 5, 2014); *Bartlow v. Grand Crowne Resorts of Pigeon Forge*, No. 11 Civ. 400, 2012 WL 6707008, at *1-2 (E.D. Tenn. Dec. 26, 2012).[3]

---

[3] "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement."  *Bozak v. FedEx Ground Package Sys., No. 3:11-cv-00738-RNC, 2014 U.S. Dist. LEXIS 106042 (D. Conn. July 31, 2014)* , at *3);*Dixon v. Zabka*, No. 3:11-cv-982 (MPS), 2014 U.S. Dist. LEXIS 159692 (D. Conn. Nov. 13, 2013)*2.If the proposed settlement

Collective actions under Section 216(b) of the FLSA require workers to affirmatively opt-in to the litigation, unlike in a Federal Rule of Civil Procedure 23 Collective action. *See Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA."); *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009) ("While Congress could have imported the more stringent criteria for Collective certification under Fed. R. Civ. P. 23, it has not done so in the FLSA."); *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 594 (S.D. Ohio 2002) ("[I]n an FLSA "opt-in" collective action the requirements need not be strictly observed because there are no absent Class Members for the court to protect."). Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated by Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989), FLSA collective actions do not implicate the same due process concerns as Rule 23 actions, *see Thompson v. Bruister & Assocs., Inc.*, 967 F. Supp. 2d 1204, 1222 (M.D. Tenn. Aug.

---

reflects a reasonable compromise over contested issues, the court should approve the settlement. *Lynn's Food Stores*, 679 F.2d 1354; *Gentrup v. Renovo Servs., LLC*, No. 07 Civ. 430, 2011 WL 2532922, at *2 (S.D. Ohio June 24, 2011); *Crawford v. Lexington-Fayette Urban Cty. Gov't*, No. 06-299-JBC, 2008 U.S. Dist. LEXIS 56089 (E.D. Ky. July 22, 2008)

23, 2013); *Bozak*, at *3. Accordingly, the exacting standards for approval of a Collective action settlement under Rule 23 do not apply to an FLSA settlement under the collective action provisions of 29 U.S.C. § 216(b) at *9 (E.D. Ky. Oct. 23, 2008). Furthermore, "settlement is the preferred means of resolving litigation." *Crawford*, 2008 LEXIS 56089, at *9 (FLSA collective action).

The FLSA settlement in this case meets the standard for approval. The settlement was the result of contested litigation with documents and information exchanged and arm's-length negotiations. Recognizing the uncertain legal and factual issues involved, the parties reached the settlement after careful evaluation and arm's-length negotiations. The settlement amount is considerable in light of the evidentiary issues concerning monetary damages. The proposed allocation of the settlement is also reasonable. It reflects the proportion of damages owed to each eligible Settlement Class Member based on the amount of tips they were required to share with hourly or salary employees, and, in fact, is calculated at a higher percentage than evidence suggests was actually shared. Furthermore, "[t]he endorsement of the parties' counsel is entitled to significant weight." *UAW v. Gen. Motors Corp.*, No. 05 Civ. 73991, 2006 WL 891151, at *18 (E.D. Mich. Mar. 31, 2006).

### C.     The Service Awards to the Named and Opt-In Plaintiffs Should Be Approved As Fair and Reasonable

Plaintiffs' request for approval of a service award of $2,924.29 to Class Representatives Leah Fabry and Lauren Connors as defined in paragraph 4.1(b) of The Agreement is fair and reasonable. "[C]lass representatives who have had extensive involvement in a . . . litigation deserve compensation above and beyond amounts to which they are entitled to by virtue of Class Membership alone." *Dallas v. Alcatel-Lucent USA, Inc., No. 09-14596, 2013 U.S. Dist. LEXIS 71204 (E.D. Mich. May 20, 2013) accord Date v. Sony Elecs., Inc., No. 07-15474, 2013 U.S. Dist. LEXIS 108095 (E.D. Mich. July 31, 2013)* (awarding service award in common fund case for, *inter alia*, Collective representative's "responding to discovery and sitting for his deposition") (citation omitted); *see also Griffin v. Flagstar Bancorp. Inc.*, No. 10 Civ. 10610, 2013 WL 6511860, at *9 (E.D. Mich. Dec. 12, 2013) (stating that service "awards have been approved by the Sixth Circuit"). Courts acknowledge that named plaintiffs in collective actions play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, 2012 WL 5493613, at *9 (service awards are "well deserved" when Collective representative spent "time and effort . . . all to the general benefit of the Collective") (citing *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 536 (E.D. Mich. Oct. 10, 2003)

13

(service awards "deserve[d]" when named plaintiffs "devoted a significant amount of time to the prosecution of this matter for the benefit of absent Class Members")); *Aros v. United Rentals, Inc., No. 3:10-CV-73 (JCH), 2011 U.S. Dist. LEXIS 125870 (D. Conn. Oct. 31, 2011)* at *3 (D. Conn. July 26, 2012); *Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, 2010 U.S. Dist. LEXIS 12762, at *1 (S.D.N.Y. Feb. 9, 2010) ("Enhancement awards for Collective representatives serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts."); *Velez v. Majik Cleaning Serv., 2005 U.S. Dist. LEXIS 709 (S.D.N.Y. Jan. 18, 2005)* at *7 (S.D.N.Y. June 25, 2007) ("in employment litigation, the plaintiff is often a former or current employee of the Defendants, and thus, by lending his name to the litigation, he has, for the benefit of the Collective as a whole, undertaken the risk of adverse actions by the employer or co- workers") (internal quotes and citation omitted);[4]

---

[4] See also Nantiya Ruan, *Bringing Sense to Incentive Payments: An Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Collective Actions*, 10 Emp. Rts. & Emp. Pol'y J. 395 (2006) (discussing the importance of aggregation of claims in the prosecution of civil and wage and hour rights); *see also Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) ("[I]ncentive awards are efficacious ways of encouraging members of a Collective to become Collective representatives and rewarding individual efforts taken on behalf of the Collective.").

Incentive awards are within the discretion of the court. *See Dallas*, at *10-11; *see also Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) ("Incentive awards are not uncommon in Collective action cases and are within the discretion of the court"; Incentive "awards are particularly appropriate in the employment context.").   In examining the reasonableness of service awards to plaintiffs, courts consider: (1) the actions they took to protect the interests of Collective or collective action members, and whether those actions resulted in substantial benefit to Collective or collective action members; (2) the personal risk they incurred; and (3) the amount of time and effort they spent in pursuing the litigation. *See, e.g.*, *Bert v. AK Steel Corp.*, No.02 Civ. 467, 2008 WL 4693747, at *3 (S.D. Ohio Oct. 23, 2008); *In re Skechers Toning Shoe Products Liab. Litig.*, Nos. 11 MD 2308, *et al.*, 2013 WL 2010702, at *14 (W.D. Ky. May 13, 2013).; *see also Dallas*, at *10 (in common fund cases, Collective representatives "deserve compensation above and beyond amounts to which they are entitled to by virtue of Class Membership alone"); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 787 (N.D. Ohio 2010) (same).

Here, Plaintiffs Leah Fabry and Lauren Connors satisfy all three factors. First, Fabry and Connors took substantial action to protect the interests of potential collective action members, and those actions resulted in a substantial benefit to those potential collective action members.   Fabry and Connors

15

engaged in substantial pre-suit investigation, including numerous discussions and strategy meetings, and provided information crucial to establishing Plaintiffs' claims. *Frank*, 228 F.R.D. at 187 (recognizing the important role that Collective representatives play as the "primary source of information concerning the claims[,]" including by responding to counsel's questions and reviewing documents).[5]

These actions have resulted in substantial benefit to the Collective, leading to an overall gross recovery of $37,500, which results in a range of awards from $221 to $3,559 for eligible claims.  (Exhibit 1) See *Johnson v. Midwest Logistics Sys., Ltd.*, No. 11 Civ. 1061, 2013 WL 2295880, at *5-6 (S.D. Ohio May 24, 2013) (in FCRA case, approving service award of $12,500 for named plaintiff when other Class Members recovery would range from $260 to $1,000, out of gross settlement fund of $452,380).

Second, Plaintiffs undertook substantial direct and indirect risk. They agreed to bring the action in their names, to be deposed, and to testify if there

---

[5] See also *Sewell*, 2012 WL 1320124, at *14 ("[F]ormer employees [] fac[ed] [sic] potential risks of being blacklisted as 'problem' employees."); *Guippone v. BH S&B Holdings*, No. 09 Civ. 1029, 2011 WL 5148650, at *7 (S.D.N.Y. Oct. 28, 2011) ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person."); *Parker*, 2010 WL 532960, at *1 ("[F]ormer employees put in jeopardy their ability to depend on the employer for references in connection with future employment.").

was a trial. Plaintiffs assumed the risk of retaliation and blacklisting. *see Frank*, 228 F.R.D. at 187 (Incentive "awards are particularly appropriate in the employment context . . . [where] the plaintiff is often a former or current employee of the Defendants, and thus, by lending his name to the litigation, he has, for the benefit of the Collective as a whole, undertaken the risk of adverse actions by the employer or co-workers")*; see also Bozak*, at *5 (lead plaintiff "assumed risk of retaliation"); *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) ("A Collective representative who has been exposed to a demonstrable risk of employer retaliation or whose future employability has been impaired may be worthy of receiving an additional payment, lest others be dissuaded."); *Velez*, 2007 WL 7232783, at *7 (observing that named plaintiffs "exposed themselves to the prospect of having adverse actions taken against them by their former employer and former co-workers").[6]

---

[6] Plaintiffs acknowledge that no adverse action was taken by Defendants against any person arising out of their participation in this case. Even where there is not a record of actual retaliation, collective representatives merit recognition for assuming the risk of retaliation for the sake of absent Class Members. *See Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *14 (S.D.N.Y. Apr. 16, 2012) ("Plaintiffs litigating cases in an employment context face the risk of subjecting themselves to adverse actions by their employer."); *Guippone*, 2011 WL 5148650, at *7 ("Even where there is not a record of actual retaliation, notoriety, or personal difficulties, Collective representatives merit recognition for assuming the risk of such for the sake of absent Class Members."); *Frank*, 228 F.R.D. at 187-88 ("Although this Court has no reason to believe that Kodak has or will take retaliatory action towards

Third, Plaintiffs spent a significant amount of time and effort in pursing this litigation on behalf of the eligible Settlement Class Members. This included the time and effort they expended in pre-litigation assistance to Plaintiffs' Counsel in investigating the claims brought and the time and effort they spent to assist in the preparation and review of the complaint, discussing the information provided by Defendants, and strategizing. Additionally, the amount of the requested service awards is reasonable and consistent with awards that have been granted in employment collective actions in this Circuit. *Swigart v. Fifth Third Bank*, No. 11 Civ. 88, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) ("The modest Collective representative award requests of $10,000 to each of the two Collective Representatives have been tailored to compensate each Collective Representative in proportion to his or her time and effort in prosecuting the claims asserted in this [FLSA] action."); *Bert*, 2008 WL 4693747, at *1, *3 (finding service award of $10,000 to five Collective representatives was "rather modest" and "fair and reasonable" in employment discrimination case).   In FLSA cases in this Circuit and elsewhere, courts

---

either Frank or any of the plaintiffs in this case, the fear of adverse consequences or lost opportunities cannot be dismissed as insincere or unfounded.").

consistently approve service awards that are larger than what Plaintiffs request here.[7]

### D. Attorneys' Fees and Costs Should be Approved as Fair and Reasonable

The FLSA provides for reasonable attorneys' fees and costs. *See* 29 U.S.C. § 216(b) ("The court in [an action to recover under FLSA] shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the Defendants, and costs of the action."); *accord United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co., Inc.*, 732 F.2d 495, 501 (6th Cir. 1984). Defendants have agreed not to object to any request by Plaintiffs for an award of attorney fees up to $12,151.59 or one-third of the settlement (after subtracting actual costs incurred) for their attorneys' fees, as well as Plaintiffs' reasonable costs which to date total $677.00. (Exhibit 1 ¶ 4.1(c)).[8]

---

[7] *See Swigart*, 2014 WL 3447947, at *7 ($10,000); *see also Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461, at *6 (E.D.N.Y. Aug. 6, 2012) (approving awards of $10,000 for each Collective representative); *Lovaglio v. W & E Hospitality, Inc.*, No. 10 Civ. 7351, 2012 WL 2775019, at *4 (S.D.N.Y. July 6, 2012) (approving service awards of $10,000 for each named plaintiff); *Alli v. Boston Mkt. Corp.*, No. 10 Civ. 00004, 2012 WL 1356478, at *3 (D. Conn. Apr. 17, 2012) (approving service awards of $12,000 for named plaintiffs); *Sewell*, 2012 WL 1320124, at *14-15 (approving service payments of $10,000 and $15,000); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at

[8] See *also Bozak*, 2014 WL 3778211, at *6 (S.D.N.Y. Jan. 7, 2010) ("Fee awards in wage and hour cases are meant to encourage members of the bar to provide

Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill that role must be adequately compensated for their efforts. *Turner v. Perry Twp., Ohio*, No. 03 Civ. 455, 2005 WL 6573783, at *3 (S.D. Ohio Dec. 30, 2005) ("[T]he Sixth Circuit has emphasized the private attorney general theory of fee recovery: the importance of bringing [FLSA] cases, even if only nominal damages, are recovered to vindicate employee rights and Congressional policy"); *see also Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, at *13 (S.D.N.Y. Sept. 16, 2011); *deMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580, at *8 (S.D.N.Y. Aug. 23, 2010); *Sand v. Greenberg*, No. 08 Civ. 7840, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010) (statutory attorneys' fees are meant to "encourage members of the bar to provide legal

---

legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.") (internal quotes and citation omitted). Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA. *See Fegley*, 19 F.3d at 1134 ("The purpose of the FLSA attorney fees provision is "to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances.") (citation and internal quotation marks omitted); *Braunstein v. E. Photographic Labs., Inc.*, 600 F.2d 335, 336 (2d Cir. 1978), *cert. denied*, 441 U.S. 944 (1979) (observing that "broad remedial purpose" of FLSA should be given "liberal construction"); *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974) (discussing "society's stake in rewarding attorneys who produce . . . benefits in order to maintain an incentive to others"); *Bozak*, 2014 WL 3778211, at *6.

services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel").

In collective action wage and hour lawsuits, public policy favors a common fund attorneys' fee award, which Courts generally determine based upon the percentage-of-fund method. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (stating that in common fund cases "a reasonable fee is based on a percentage of the fund bestowed on the Collective"); *Rawlings v. Prudential-Bach Props., Inc.*, 9 F.3d 513, 515 (6th Cir. 1993) (finding clear "trend towards adoption of a percentage of the fund method in [common fund] cases"); *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *17 (stating Sixth Circuit has recognized numerous advantages to percentage of fund method); *Bessey v. Packerland Plainwell, Inc.*, No. 06 Civ. 95, 2007 WL 3173972, at *4 (W.D. Mich. Oct. 26, 2007) ("The fact that the damages which could have been claimed by each Collective member were relatively modest provides a strong reason for adopting the percentage of recovery method, for it rewards counsel for taking on a case which might not otherwise be economically feasible."); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 531-32 (finding application of "percentage-of-the-[common-]fund approach appropriate); *Aros*, 2012 WL 3060470, at *5; *Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599822, at *7 (S.D.N.Y. Aug. 16, 2011); *see also Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir.

21

2009) ("[I]n common-fund cases, we require only that awards of attorney's fees be reasonable under the circumstances.") (citation and internal quotes omitted).

A percentage of the fund approach fosters judicial economy by eliminating a detailed and time-consuming lodestar analysis. *Rawlings*, 9 F.3d at 516-17. This is an important feature because "the lodestar method is too cumbersome and time-consuming for the resources of the Court." *In re Cardizem CD*, 218 F.R.D. at 532 (citation and internal quotes omitted). The lodestar approach burdens a court with the task of reviewing extensive time records reflecting many hours of attorney time. *Rawlings*, 9 F.3d at 516-17. In contrast, the percentage of the fund approach is "easy to calculate" and it "establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery." *Id.* at 516. Crucially, "the percentage of the fund method more accurately reflects the results achieved." *Id.*

In applying the common fund method, courts award attorneys' fees as a percentage of the entire maximum gross settlement fund—and not as a percentage of the amount claimed—even where amounts to be paid to settlement Class Members who do not file claims revert to Defendants. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 480-81 (1980) (stating that this approach "rectifies inequity by requiring every member of the Collective to

22

share attorney's fees to the same extent that he can share the recovery"); *Moulton*, 581 F.3d at 352 (rejecting "objectors focus on the amount *claimed* rather than the amount *allocated*"); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436-47 (2d Cir. 2007) (holding that because the entire fund was created through the efforts of counsel, that the allocation of fees by percentage should be awarded based on the total funds made available, whether claimed or not); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-98 (11th Cir. 1999) ("In *Boeing Co. v. Van Gemert*, the Supreme Court settled this question by ruling that Collective counsel are entitled to a reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed.") (quoting Herbert B. Newberg & Alba Conte, Newberg on Collective Actions § 14.03 (3d ed. 1992)); *Williams v. MGM-Pathe Commc'ns. Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (reversing district court's award of 33 percent of the claimed fund and awarding attorneys' fees of 33 percent of funds made available).

### 1. An Award of One-Third of the Fund is Reasonable and Should Be Granted

Plaintiffs request an award of $12,151.99, or one-third of the settlement common fund (after actual costs in the amount of $677.00 is subtracted), as attorneys' fees. The central requirement for an award of fees is that it be

reasonable. *See Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 2008); Rawlings, 9 F.3d at 516 ("In this circuit, we require only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances."); *Dillworth v. Case Farms Processing, Inc.*, No. 08 Civ. 1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010) (using reasonableness standard in FLSA context). The work that Plaintiffs' Counsel has performed in litigating and settling this case demonstrates their commitment to the FLSA collective and to representing the collective's interests and establishes the reasonableness of their fees. Plaintiffs' Counsel has committed substantial resources to prosecuting this case. The work that Plaintiffs' Counsel has performed including investigating claims, reviewing documents, drafting the complaint, meeting with clients, legal research, preparing a motion for conditional class certification, and negotiating the settlement terms and reducing them to a formal settlement agreement, was significant and contributed to the substantial recovery obtained on behalf of the collective. *See Capsolas v. Pasta Res. Inc.*, No. 10 Civ. 5595, 2012 WL 4760910, at *7 (S.D.N.Y. Oct. 5, 2012), (approving requested fee where "[t]he work that Collective Counsel . . . performed in litigating and settling th[e] case demonstrate[d] their commitment to the Collective and to representing the Collective's interests").

Here, Plaintiffs' Counsel has secured a considerable settlement of $37,500. Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (noting that the "most critical factor is the degree of success obtained"); *Rawlings*, 9 F.3d at 516 (stating that a percentage of the fund will compensate counsel for the result achieved); *Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir. 1983).

Plaintiffs' Counsel's efforts to date have been without compensation, and their entitlement to be paid has been wholly contingent upon achieving a good result. See *Dillworth*, 2010 WL 776933, at *8 (citing as justification for recovery of percentage recovery from common fund "[t]he contingent nature of the fee agreement," which "meant that counsel bore the risk of receiving no fee in the event that a less than favorable result was achieved").[9]

The fee requested by Plaintiffs' Counsel also is reasonable because they will continue to perform a significant amount of work on behalf of the collective

---

[9] See also *In re Se. Milk Antitrust Litig.*, No. 08 MD 1000, 2013 WL 2155387, at *3 (E.D. Tenn. May 17, 2013) (finding reasonable award of one-third of settlement fund; granting $52,866,667, in addition to previous award of $48,333,333); *Dallas*, 2013 WL 2197624, at *12 (preliminarily approving attorneys' fees of one-third of the settlement amount); *In re Packaged Ice*, 2011 WL 6209188, at *19 (noting that an award of "close to 30% appears to be a fairly well-accepted ratio in cases of this type and generally in complex Collective actions").

in implementing the settlement and administering the settlement but will not make a supplemental fee application. *See Bozak*, 2014 WL 3778211, at *8. Plaintiffs' Counsel anticipates that they will be required to spend additional time answering questions from opt-in class members and administering the settlement. Plaintiffs' Counsel has a continuing obligation to represent the collective during the settlement approval process and the disbursement phase.

Plaintiffs' Counsel has also incurred $677.00 in out-of-pocket costs prosecuting this case, including costs for electronic research, court fees, postage and print fees, telephone calls, and travel. (Exhibit 2) *see Griffin*, 2013 WL 6511860, at *9 (approving payment of costs when "documented by firm and by category of expense . . . and appear reasonable"); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 535 (approving costs as "type routinely billed by attorneys to paying clients in similar cases"). Accordingly, Plaintiffs' Counsel's request for attorneys' fees of $12,151.59 and reimbursement of actual costs of $677.00 is reasonable and should be approved.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court issue an order: (1) approving the $37,500 settlement set forth in the

The Agreement; (2) approving service awards to the Class Representative; and (3) approving Plaintiffs' request for attorneys' fees and an additional reimbursement of costs and litigation expenses.

Respectfully submitted,

Pitt, McGehee, Palmer & Rivers, P.C.

By: s/ Channing Robinson-Holmes
     Megan Bonanni (P52079)
     Channing Robinson-Holmes (P81698)
     Attorneys for Plaintiff
     117 W. Fourth Street, Suite 200
     Royal Oak, MI  48067
     (248) 398-9800
     mbonanni@pittlawpc.com
     crobinson@pittlawpc.com

Dated: December 11, 2019

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing instrument was
filed with the U.S. District Court through the ECF filing system
and that all parties to the above cause was served via the ECF
filing system on December 11, 2019.

Signature:     /s/ Carrie Bechill
                     117 W. Fourth Street, Suite 200
                     Royal Oak, MI 48067
                     (248) 398-9800
                     cbechill@pittlawpc.com